IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **TERESA KAY THOMPSON,** § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. W-10-CA-00062 | |
| § | | |
| **SOMERVELL COUNTY, TEXAS,** § | | |
| Defendant. § | | |

**ORDER**

Before the Court is the Motion for Summary Judgement submitted by the Defendant, Somervell County, Texas. Having considered the motion, the response, the reply thereto, and the applicable legal authority, the Court finds that the motion has merit and should be granted.

**I.     Statement of Facts**

The Plaintiff, Teresa Kay Thompson, was an employee of Somervell County, Texas ("Somervell County" or "County") for approximately fourteen years. *See* Ex. 1 to Pl.'s Resp. to Def.'s Mot. for Summ. J. at 1. Somervell County hired Thompson in May 1995, and she became an Assistant County Auditor the next year. *See id.*

In August 2005, Thompson alleged that Darrell Morrison, the Somervell County Auditor, sexually harassed her. *See id.* Specifically, she claimed that Morrison made inappropriate advances, stroked her hair, and forced her to hug him. *See id.* Thompson rejected Morrison's advances. *See id.* Feeling uncomfortable

1

and concerned for her job, she immediately contacted Ken Thrasher, the County's Personnel Director, and filed a written report. *See id*. at 1–2. However, Thompson ultimately elected not to proceed with her complaint after Morrison apologized for his boorish behavior. *See id.* at 2; Ex. C to Def.'s Mot. for Summ. J. Although she felt uncomfortable working with Morrison, Thompson remained at the County Auditor's office for three more years. *See* Ex. 2 to Pl.'s Resp. to Def.'s Mot. for Summ. J. at 2; Ex. B to Def.'s Mot. for Summ. J. at 88.

In 2008, Thompson transferred to the Somervell County Expo Center, where she admittedly struggled. *See* Ex. 1 to Pl.'s Resp. to Def.'s Mot. for Summ. J. at 3. She made errors while preparing the Expo Center's contracts, had difficulty keeping the bank account balanced, and failed to keep a deposit ledger. *See* Ex. D to Def.'s Mot. for Summ. J. at 1–2. Thompson's supervisor, Mike Dooley, met with her to discuss these problems but did not discipline her. *See id.*; Ex. 1 to Pl.'s Resp. to Def.'s Mot. for Summ. J. at 3. Nevertheless, Thompson felt uncomfortable working at the Expo Center and "wanted to find a new job in the County for which she was better suited." *See* Ex. 1 to Pl.'s Resp. to Def.'s Mot. for Summ. J. at 3.

On May 4, 2009, Thompson requested her personnel file from Thrasher, including the paperwork documenting the 2005 sexual harassment claim. *See id.* The sole reason for her request was to facilitate her efforts to obtain a new job. *See id.* She believed that having the paperwork would improve her chances, because she would be able to present the file to the Somervell County Commissioners and

explain why she felt compelled to take the position at the Expo Center. *See id.* Thompson received her personnel file on May 11, 2009. *See id.*

On May 19, 2009, Dooley sent a Work Deficiencies Memorandum to Thompson, detailing the errors in drafting the contracts and balancing the bank account. *See id.* The Memorandum also informed Thompson that she would be unable to retain her position if the errors remained uncorrected. *See id.* Dooley claims that he sent the Memorandum because the quality of Thompson's work was deteriorating. *See* Ex. 3 to Pl.'s Resp. to Def.'s Mot. for Summ. J. at 24. However, he is unable to recall any specific or notable errors that prompted his action. *See id.* at 24, 26–27, 38.

According to Thompson, Dooley's attitude toward her changed dramatically after she requested her personnel file. His friendly demeanor became curt and businesslike. *See* Ex. 2 to Pl.'s Resp. to Def.'s Mot. for Summ. J. at 45–47. And, on one unspecified occasion, he looked at Thompson and commented that he believed an employee would sue the County before any non-employee. *See* Ex. 1 to Pl.'s Resp. to Def.'s Mot. for Summ. J. at 4.

After receiving the Work Deficiencies Memorandum, Thompson turned in more contracts containing errors. *See* Ex. D to Def.'s Mot. for Summ. J. at 2. In one contract, twenty dates for shows and rehearsals were incorrect, because Thompson had failed to verify the information. *See id.* Another contained incorrect dates and misspelled words. *See* Ex. 4 to Pl.'s Resp. to Def.'s Mot. for Summ. J.

at 34.  Dooley instructed Thompson to have a co-worker help her correct these errors, but she failed to do so.  *See* Ex. D to Def.'s Mot. for Summ. J. at 2.  Although she eventually corrected all the dates, Dooley asked Thompson to tender her resignation or face termination.  *See id.*; Ex. 4 to Pl.'s Resp. to Def.'s Mot. for Summ. J. at 35–37.  When she refused to resign, Dooley fired her.  *See* Ex. D. to Def.'s Mot. for Summ. J. at 3.

On February 25, 2010, Thompson sued Somervell County in the U.S. District Court for the Northern District of Texas, alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964.  Specifically, Thompson alleged that Somervell County retaliated against her for opposing sex harassment.  The District Court for the Northern District of Texas, sua sponte, transferred the case to this Court.  Somervell County now moves for summary judgment on all Thompson's claims.

### III.   Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and … the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(c)(2).  The movant is entitled to summary judgment if, after an adequate time for discovery, the non-movant fails to make a sufficient showing on an essential element of her case with respect to which she bears the burden of proof at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant must initially demonstrate the lack of evidence supporting the non-movant's case.

*See id.* at 325.  The burden then shifts to the non-movant to present some evidence showing that there is a genuine issue for trial.  *See id.* at 324.

To survive a motion for summary judgment, the proffered fact issues must be material and subject to a genuine dispute.  Material facts are those that have the potential to affect the outcome of the litigation under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  Moreover, a "dispute about a material fact is genuine … if the evidence is such that a reasonable jury could return a verdict for the non-movant."  *Id.*  In making this determination, the court may not weigh the evidence or evaluate the credibility of the witnesses.  *See id.*  Instead, it must view all facts in the light most favorable to the non-movant and make all justifiable inferences in her favor.  *See id.*

**IV.   Analysis**

The central issue in this case is whether Thompson has presented any evidence to support a *prima facie* case of retaliation under Title VII.  Because this Court concludes that she has not, Somervell County is entitled to summary judgment.

  A. *Title VII Framework*

Title VII proscribes employers from retaliating against any individual who challenges unlawful discrimination, including sexual harassment.  To encourage employees to speak out against prohibited conduct, Title VII provides that no

employer may discriminate against any employee "becaue [s]he has opposed any practice made unlawful by [Title VII] or because [s]he has participated in any manner in an investigation, proceeding, or hearing under [Title VII]." *See* 42 U.S.C. § 2000e-3(a) (2006). Discrimination is unlawful under Title VII when it is based on race, color, religion, sex, or national origin. *See id.* § 2000e-2(a)(1). Sexual harassment is a form of sex discrimination prohibited by the statute. *See Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66–67 (1986).

In a pretext case, where the plaintiff's claim of retaliation is based solely on circumstantial evidence, the courts apply the *McDonald Douglas* burden-shifting analysis. *See Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 330 (5th Cir. 2004); *see also Smith v. Xerox Corp.*, 602 F.3d 320, 327 (5th Cir. 2010) (explaining the difference between mixed-motive and pretext claims). Under this framework, the plaintiff must first make a *prima facie* case of retaliation by showing that: (1) she engaged in a protected activity; (2) she was subject to an adverse employment action; and (3) a causal link existed between the protected activity and the adverse employment action. *See Hockman*, 407 F.3d at 330. If the plaintiff makes this showing, the burden then shifts to the defendant to articulate a legitimate non-retaliatory reason for the adverse employment action. *See id.* If the defendant articulates such a reason, the burden shifts back to the plaintiff to show that the proffered rationale is a mere pretext and that the protected activity was the but-for cause of the adverse action. *See id.*

In this case, Somervell County contends that it is entitled to summary judgment on multiple grounds. First, it argues that Thompson has failed to show a *prima facie* case of retaliation because she has not produced any evidence that she was engaged in a protected activity or that a causal link existed. Alternatively, Somervell County contends that it had a legitimate reason for its decision to terminate Thompson, namely her poor job performance.

    *B.*    *Thompson's* Prima Facie *Case: Protected Activity*

The first issue is whether Thompson has presented any evidence that she engaged in a protected activity. "Protected activity" is defined as opposition to any practice rendered unlawful by Title VII or participation in any Title VII investigation, proceeding, or hearing. *See* 42 U.S.C. § 2000e-3(a); *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003). Here, Thompson does not allege that she participated in any investigation by the Equal Employment Opportunity Commission or any other Title VII proceeding. Consequently, the crux of the dispute is whether she opposed an unlawful employment practice.

To qualify as opposition, the purpose of the plaintiff's activity must have been to confront, prevent, or redress discrimination proscribed by Title VII. The Supreme Court recently addressed the scope of Title VII's "opposition" clause. *See Crawford v. Metro. Gov't of Nashville & Davidson County*, 129 S. Ct. 846, 850 (2009). The Court held that "[t]he term 'oppose,' being left undefined by statute, carries its ordinary meaning: 'to resist or antagonize … ; to contend against; to confront;

7

resist; withstand.'" *Id.* (quoting Webster's New International Dictionary 1710 (2d ed. 1958)). As Justice Alito noted, the primary definitions of "oppose" all require conduct that is both "active and *purposive*." *See id.* at 853–54 (Alito, J., concurring in judgment) (emphasis added). The definitions clearly imply action directed toward a specific end—confronting, withstanding, or resisting what the plaintiff reasonably believed to be unlawful discrimination. *See id.* (approving the following definition of the statutory term: "taking action (including making a statement) to end, prevent, redress, or correct unlawful discrimination"). Thus, to be considered opposition, the plaintiff must have acted to further one of these purposes. *See, e.g., Merrit v. Dillard Paper Co.*, 120 F.3d 1181, 1187 (11th Cir. 2000) (stating that the opposition clause focuses on the motive of the employees).

In this case, Thompson has failed to present any evidence that she engaged in "opposition" to unlawful discrimination. She asserts generally that she opposed sexual harassment and points to her request for the paperwork documenting the incident with Morrison. *See, e.g.,* Pl.'s Original Compl. at 2, 4. However, her request for her personnel file would not qualify as opposition. The alleged sexual harassment occurred approximately four years before the records request. *See* Ex. 1 to Pl.'s Resp. to Def.'s Mot. for Summ. J. at 1, 3. And Thompson did not request the documents in order to file a claim or initiate an investigation, to seek redress for any injuries, to inform the public of abuse by a County official, or to prevent Morrison from engaging in any further inappropriate acts. Instead, the sole purpose

of her request was to facilitate her efforts to find a better job in the County. *See id.* at 3. She sought to present the 2005 incident as a historical fact to the Somervell County Commissioners, because it would explain why she felt compelled to accept the position at the Expo Center. In light of Thompson's admissions, a reasonable jury could not logically infer that she was engaged in protected "opposition." Therefore, she has not made the necessary *prima facie* showing, and Somervell County is entitled to summary judgment on this issue.

    C.    *Thompson's* Prima Facie *Case: Causal Link*

Furthermore, even if this Court were to assume, *arguendo,* that Thompson's records request constituted a protected activity, Somervell County would still be entitled to summary judgment. Thompson has failed to present sufficient evidence of another essential element of her *prima facie* case—that a causal link existed between the protected activity and the adverse employment action.

To establish a causal link, the plaintiff must show that the employer's decision to terminate was based in part on the protected activity. *See Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (quoting *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112 (5th Cir. 1998)). This necessarily requires the plaintiff to present at least some evidence that the ultimate decision maker had knowledge of the protected activity. *See Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir. 2003); *Gee v. Principi*, 289 F.3d 342, 346 (5th Cir. 2002). If the final decision maker was completely unaware, "then it cannot be said (even as an initial matter)

that [he] might have been retaliating against the plaintiff for having engaged in that activity." *See Manning*, 332 F.3d at 883 n.6.

In this case, Thompson has failed to present any evidence that Dooley knew that she requested the paperwork recording her sexual harassment claim. Dooley was Thompson's supervisor at the Expo Center, and he alone made the decision to terminate her. *See* Ex. D to Def.'s Mot. for Summ. J. at 1, 3. Dooely claims that, at the time of her termination, he was unaware that Thompson had requested her personnel file and that his decision was based solely on her job performance. *See id.* In her response, Thompson offered no evidence tending to show that Dooley had actual knowledge of her request. Therefore, there is no genuine issue for trial, and Somervell County is entitled to summary judgment.

Thompson's arguments to the contrary are unpersuasive. In her response, Thompson insinuates that the temporal proximity between the request for her personnel file and her termination is sufficient to raise a genuine issue of material fact. *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. at 9. She stresses that Dooley did not discipline her until after she re-opened the sexual harassment incident. *See id.* She also points out that only fifteen days elapsed from her records request to the issuance of the Work Deficiencies Memorandum and that she was terminated less than one month after her request. *See* Ex. 1 to Pl.'s Resp. to Def.'s Mot. for Summ. J. at 3–4.

Although temporal proximity is important with regard to the existence of a

causal link, it alone is insufficient. "Fifth Circuit precedent requires evidence of knowledge of the protected activity on the part of the decision maker *and* temporal proximity …." *Ramirez v. Gonzalez*, 225 F. App'x 203, 210 (5th Cir. 2007) (per curiam) (emphasis added); *see also Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (stating that "temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct"). The Supreme Court has also indicated that both knowledge and temporal proximity are required. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (per curiam). Thus, temporal proximity only becomes factor if the plaintiff produces some evidence of the employer's knowledge of the protected activity.

For this reason, the case upon which Thompson principally relies, *Shackelford v. Deliotte & Touche, LLP*, 190 F.3d 398 (5th Cir. 1999), is distinguishable. In *Shakelford*, the Fifth Circuit stated that where there is a close timing between the protected activity and an adverse employment action, "the employer must articulate a legitimate non-discriminatory reason that explains both the action and the timing." *See id.* at 408 (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)). But, as Thompson fails to recognize, that case had reached the pretext stage, meaning that the plaintiff had already established her *prima facie* case. *See id.* at 407. Indeed, the district court found

11

that the plaintiff in *Shackelford* had presented some evidence that her employer knew about her protected activity. *See Shackelford v. Deliotte & Touche, LLP*, No. CA 3-97-CV-70-R, 1998 WL 345545, at *4 (N.D. Tex. June 24, 1998), *aff'd in part, rev'd in part*, 190 F.3d 398 (5th Cir. 1999). Here, Thompson has presented no such evidence. Therefore, she has failed to show a causal connection, and summary judgment is appropriate.

**V. Conclusion**

Because Thompson has failed to raise a genuine issue of material fact on two of the three elements of her *prima facie* case, this Court need not reach the balance of the burden-shifting analysis. Somervell County is entitled to summary judgment on Thompson's retaliation claim. Accordingly, it is

**ORDERED** that "Defendant Somervell County, Texas's Motion for Summary Judgment" is **GRANTED** and that this cause is **DISMISSED**. It is further

**ORDERED** that any pending motions not previously ruled upon by this Court are **DENIED**.

**SIGNED** on this 7th day of December, 2010.

_____
WALTER S. SMITH, JR.
UNITED STATES DISTRICT JUDGE