United States Court of Appeals
Fifth Circuit

# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

**FILED**
July 1, 2011

Lyle W. Cayce
Clerk

No. 11-50016
Summary Calendar

D.C. Docket No. 6:10-CV-62

**FILED**
AUG 01 2011
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

TERESA KAY THOMPSON,

    Plaintiff - Appellant

v.

SOMERVELL COUNTY, TEXAS,

    Defendant - Appellee

Appeal from the United States District Court for the
Western District of Texas, Waco

Before HIGGINBOTHAM, SMITH, and HAYNES, Circuit Judges.

## JUDGMENT

This cause was considered on the record on appeal and the briefs on file.

It is ordered and adjudged that the judgment of the District Court is affirmed.

IT IS FURTHER ORDERED that appellant pay to appellee the costs on appeal to be taxed by the Clerk of this Court.

ISSUED AS MANDATE: JUL 2 5 2011

A True Copy
Attest

Clerk, U.S. Court of Appeals, Fifth Circuit
By:_____
    Deputy

New Orleans, Louisiana    JUL 2 5 2011

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
July 1, 2011

Lyle W. Cayce
Clerk

No. 11-50016
Summary Calendar

TERESA KAY THOMPSON,

            Plaintiff-Appellant

v.

SOMERVELL COUNTY, TEXAS,

            Defendant-Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:10-CV-62

Before HIGGINBOTHAM, SMITH, and HAYNES, Circuit Judges.

PER CURIAM:[*]

  Plaintiff Teresa Thompson ("Thompson") appeals from the district court's grant of summary judgment to Defendant Somervell County ("Somervell County" or "County"). Because Thompson failed to establish a prima facie case of Title VII retaliation, we AFFIRM the judgment of the district court.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. Background

Thompson began employment with Somervell County in May 1995 and became an Assistant County Auditor the next year. In August 2005 she alleged that Darrell Morrison ("Morrison"), the County Auditor, had sexually harassed her. Although Thompson filed a written report with Ken Thrasher ("Thrasher"), the County's Personnel Director, she ultimately decided not to pursue her complaint after Morrison apologized to her and signed a statement to that effect. Although she alleges that she continued to feel uncomfortable working with Morrison, Thompson remained at the County Auditor's office for three more years without incident.

In 2008, Thompson transferred to the Somervell County Expo Center. Thompson does not deny that she struggled with her responsibilities in this new position. She had difficulties keeping the bank account balanced and failed to keep a deposit ledger as she had been instructed. Her supervisor at the Expo Center, Mike Dooley ("Dooley"), discussed these problems with her, but he did not discipline her. However, due to her difficulties at the Expo Center, Thompson began looking for other positions. On May 4, 2009, Thompson asked Thrasher for her personnel file, including the written report of her sexual harassment complaint. Thompson told Thrasher that she "was going to do whatever it took to make this right." Thompson testified that she wanted the paperwork "to explain why [she] had to take [the Expo Center] job. [She] simply wanted to find a job in the County for which [she] was better suited." She received the personnel file on May 11.

On May 18, 2009, Dooley reprimanded Thompson for her poor work quality for the first time. The next day, he sent her a Work Deficiencies Memorandum ("Memorandum"), detailing her errors in drafting contracts and balancing the bank account. The letter stated that "[t]here are several deficiencies in

2

[Thompson's] work that must be corrected" and that Thompson could not "hold [the] position if the errors are not corrected."

After receiving the Memorandum, Thompson continued to submit contracts with substantive errors. In one contract, Thompson failed to verify the dates for shows and rehearsals as directed. As a result, all twenty dates in the contract were wrong. Dooley directed Thompson to have co-worker Abe Comacho help her, but when Dooley discussed the matter with Comacho, Comacho indicated that Thompson had not sought his assistance. On June 1, 2009, Dooley told Thompson that she would have to resign by the end of the next day or she would be terminated. Thompson did not resign, and Dooley fired her as indicated.

Thompson claims that her relationship with Dooley became less warm and more professional after she requested her paperwork. She also claims that during this time, when discussing an incident in which a patron of an Expo Center event was injured, Dooley opined that an employee would be more likely than an outsider to sue the County.

Thompson brought suit against Somervell County alleging that she was fired in retaliation for requesting the documentation of her sexual harassment report from 2005. After discovery, the County filed a motion for summary judgment, arguing that Thompson had not engaged in a protected activity and that there was no evidence of a causal link between her request and her termination. The district court granted the County's motion, and Thompson timely appealed.

## II. Analysis

This court reviews a district court's grant of summary judgment de novo, applying the same standard as the district court. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Summary judgment is appropriate where the evidence

3

demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

Thompson's suit alleges that Somervell County retaliated against her for engaging in activity protected by Title VII. *See* 42 U.S.C. § 2000e-3(a). Specifically, Thompson alleges that the County fired her because she asked for the paperwork detailing Morrison's sexual harassment toward her. Where a plaintiff alleges unlawful retaliation in violation of Title VII, the court employs the burden-shifting analysis the *McDonnell Douglas*[1] burden-shifting framework. *See Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996).

Under the first step of the *McDonnell Douglas* framework, the plaintiff must make a prima facie case of discrimination. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007). To make a prima facie case of retaliation, Thompson "must demonstrate that: (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action." *Id.* The district court determined that Thompson had failed to make a prima facie case of retaliation under Title VII because she failed to establish that she had engaged in protected activity or that there was a causal connection between her termination and her claimed protected activity.

### A. Protected Activity

"An employee has engaged in protected activity when she has (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation,

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under the *McDonnell Douglas* framework, an employee must first establish a prima facie case of retaliation. *Hockman v. Westward Commc'ns., LLC*, 407 F.3d 317, 330 (5th Cir. 2004). If successful, then the employer must demonstrate a legitimate, nonretaliatory reason for the adverse employment action. *Id.* If the employer meets this burden, the burden then shifts to the employee to show that the employer's stated rationale is pretextual and that engaging in the protected activity was the but-for cause of the adverse employment action. *Id.*

4

proceeding, or hearing' under Title VII." *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372 (5th Cir. 1998) (internal citations omitted). As noted by the Supreme Court, "oppose" is undefined by Title VII and therefore "carries its ordinary meaning." *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 129 S. Ct. 846, 850 (2009). Though the Court rejected a definition of "oppose" that requires the opposition to be "active [and] consistent," *id.* at 851, it is clear that opposition nonetheless must be purposive. *See id.* ("[W]e would call it 'opposition' if an employee *took a stand against* an employer's discriminatory practices not by 'instigating' action, but by standing pat, say, by refusing to follow a supervisor's order to fire a junior worker for discriminatory reasons.") (emphasis added); *id.* at 853 (Alito, J., concurring) ("The primary definitions of the term 'oppose' . . . require conduct that is . . . purposive.").

In this case, Thompson emphasizes that, when requesting the documentation of her sexual harassment report from four years earlier, she told Thrasher that she "was going to do whatever it took to make this right," arguing that this constituted an "opposition" statement. *See id.* at 851 ("When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." (internal quotation marks and citation omitted) (alteration in original)). We conclude that the district court did not err in finding this statement insufficient to qualify as "opposition" given that Thompson's admitted reason for requesting the documentation was because she "simply wanted to find a job in the County for which [she] was better suited." This stated reason is also consistent with the timing of the request, having been made nearly four years after the incident at issue and more than three years after she signed a "no action" letter. Because Thompson admits that her sole intent in requesting the documentation of her sexual harassment complaint was to find another position within the County, no

5

reasonable jury could find that the request was made with intent "to contend against[,] confront[,] resist [or] withstand" any long ago discriminatory practices by the County or its officials. *See id.* at 850 (quoting WEBSTER'S NEW INTERNATIONAL DICTIONARY 1710 (2d ed. 1958)); *cf. Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1136-37 (5th Cir. 1981) (affirming district court's finding of opposition where there was "substantial evidence . . . that the purpose of the boycott and picketing was to opposed defendant's discrimination against blacks in certain employment opportunities"). Therefore, Thompson's request did not constitute opposition to an unlawful practice under Title VII.

**B. Causal Link**

Thompson also failed to establish the third prong of a prima facie retaliation case, a causal link between the alleged protected activity and the adverse employment action. To establish the causal link between her request for the sexual harassment documentation and her termination, Thompson relies exclusively on the fact that she received the Memorandum within one week of requesting the report and was terminated within one month of requesting the report. However, even at the prima facie stage, temporal proximity can only establish a causal link when it is connected to the decision maker's knowledge of the protected activity. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) ("The cases that accept mere temporal proximity between *an employer's knowledge of* protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." (emphasis added) (internal quotation marks and citation omitted)); *Cothran v. Potter*, 398 F. App'x 71, 73-74 (5th Cir. 2010) (unpublished) ("The combination of temporal proximity and knowledge of a protected activity may be sufficient to satisfy a plaintiff's prima facie burden for a retaliation claim"); *Ramirez v. Gonzalez*, 225 F. App'x 203, 210

6

(5th Cir. 2007) (unpublished) ("Fifth Circuit precedent requires evidence of knowledge of the protected activity on the part of the decision maker and temporal proximity between the protected activity and the adverse employment action."); *see also Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) ("[T]emporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct.").

In this case, Dooley testified that he was unaware that Thompson had requested documentation of her sexual harassment report at the time that he fired her, and his testimony is uncontroverted on this matter. Indeed, Thompson admits that she has no evidence that Dooley knew that she had requested her documentation other than to rely on the inference of temporal proximity. Therefore, even if we were to assume that Thompson's request for documentation of her prior sexual harassment report constituted a protected activity, Thompson has failed to establish even a prima facie causal link between her request and her termination.

### III. Conclusion

For the above reasons, we AFFIRM the district court's summary judgment.